UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| McDONALD'S CORPORATION, McDONALD'S USA, LLC, LEXI MANAGEMENT, LLC, and DAK4 LLC, ) ) ) ) Plaintiffs, ) ) v. ) ) AUSTIN MUTUAL INSURANCE ) COMPANY, ) ) Defendant. ) | 20 C 5057 Judge Charles P. Kocoras |

**ORDER**

Before the Court is Defendant Austin Mutual Insurance Company's ("Austin Mutual") Motion to Dismiss Plaintiffs' Complaint under Federal Rule of Civil Procedure 12(b)(6). For the following reasons, the Court denies Austin Mutual's Motion.

**STATEMENT**

In this insurance coverage dispute, Plaintiffs McDonald's Corporation, McDonald's USA LLC, and McDonald's franchise owners Lexi Management LLC and DAK4, LLC (collectively, "Plaintiffs") argue that Austin Mutual has a duty to defend Plaintiffs under identical commercial general liability insurance ("CGL") policies (the "Policies").

1

Plaintiffs argue that Austin Mutual has failed to defend Plaintiffs in the Circuit Court of Cook County case *Taynarvis Massey, et al. v. McDonald's Corporation, et al.*, Case No. 2020 CH 04247 (the "*Massey* suit"). The *Massey* suit alleges that Plaintiffs are liable for public nuisance and negligence in their decision to remain open during the COVID-19 pandemic without enhanced health and safety standards. The *Massey* plaintiffs specifically seek a mandatory injunction requiring Plaintiffs to, among other things: (1) provide their employees with adequate personal protective equipment; (2) preclude the reuse of face masks; (3) supply hand sanitizer; (4) require that customers wear face masks; (5) monitor employee COVID-19 infections; and (6) provide Plaintiffs' employees with accurate information about COVID-19.

> The Policies defining Austin Mutual's duty provide that Austin Mutual:
>
> will pay those sums that the insured becomes legally obligated to pay ***as damages because of "bodily injury"*** … to which this insurance applies. [Austin Mutual] will have the right and duty to defend the insured against any "suit" seeking those damages. However, [Austin Mutual] will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" … to which this insurance does not apply.

Dkt. #1-1 at 54; Dkt. #1-2 at 72. (emphasis added). The Policies further provide that the "bodily injury" must be caused by an "occurrence" that takes place in the "coverage territory." *Id.* The Policies define "bodily injury" as "bodily injury, sickness, disease or mental anguish sustained by a person, including death resulting from any of these at any time." Dkt. #1-1 at 80; Dkt #1-2 at 98. The Policies also define the term

2

"occurrence" as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions." Dkt. #1-1 at 17.

Against this backdrop, Austin Mutual moves to dismiss under Federal Rule of Civil Procedure 12(b)(6) because the *Massey* suit does not seek (1) "damages" (2) "because of"; (3) "bodily injury." Austin Mutual argues that the nature of Plaintiffs' expenditure is not to remedy bodily injury to third-persons. Plaintiffs respond that "but for" the *Massey* plaintiffs contracting COVID-19—an indisputable bodily injury—they would not have to expend money as "damages" to comply with the mandatory injunction in the *Massey* lawsuit. They also argue that exposure to the SARS-CoV-2 virus (the "Virus") constitutes "bodily injury" and that money spent to comply with the mandatory injunction would constitute "damages" "because of" the exposure to the Virus.

In evaluating this dispute, the Court accepts as true all well pled facts in the Complaint and draws all reasonable inferences in favor of the Plaintiffs. *AnchorBank, FSB v. Hofer*, 649 F.3d 610, 614 (7th Cir. 2011). To prevail on this motion, Plaintiffs' Complaint must state a "short and plain statement of the claim showing that [they are] entitled to relief." Fed. R. Civ. P. 8(a)(2).

Here, the "parties agree that the substantive law of Illinois governs. Under Illinois law, an insurer's duty to defend is broader than its duty to indemnify. To determine whether an insurer has a duty to defend, a court compares the underlying complaint's allegations (*liberally construed in the insured's favor*) to the policy's

3

language. If the underlying complaint alleges facts within or *potentially within* policy coverage, an insurer is obligated to defend its insured even if the allegations are groundless, false or fraudulent. An insurer can only refuse to defend if the allegations of the underlying complaint preclude *any possibility* of coverage. *Any doubts* about the duty to defend are resolved in favor of the insured." *Federated Mut. Ins. Co. v. Coyle Mech. Supply Inc.*, 983 F.3d 307, 314 (7th Cir. 2020) (cleaned up and emphasis added).

This case raises an admittedly novel question of whether costs incurred to comply with a mandatory injunction due to COVID-19 and the Virus constitute "damages" "because of" "bodily injury." Kenneth S. Abraham, a Professor at the University of Virginia School of Law and a leading national insurance scholar, observes that the phrase "because of bodily injury" is usually subject to "only one reasonable interpretation." Kenneth S. Abraham, *Plain Meaning, Extrinsic Evidence, and Ambiguity: Myth and Reality in Insurance Policy Interpretation*, 25 Conn. Ins. L.J. 329, 349-50 (2019). "However, when a claim for coverage of an unconventional form of liability arises - for example, when the party seeking to recover damages from the policyholder that are the consequence of bodily injury is not the same party who suffered bodily injury - then the courts must become more explicit what these words mean." *Id.* at 350.

In line with Professor Abraham's suggestion that we be as explicit as possible about each part of the phrase, the Court will now address the terms "damages," "because of," and "bodily injury" in turn. While this case is a very close call in the ivory tower

4

of academia, it is much less close as a purely legal matter because Plaintiffs' at this stage only need to allege facts "potentially" within the Policies' coverage. *See Federated Mut. Ins. Co.*, 983 F.3d at 314. Under this approach, Austin Mutual can only win if the underlying Complaint precludes "any possibility" of coverage. *Id.* Part of the reasoning for this standard is that "the question of coverage should not hinge on the draftsmanship skills or whims of the plaintiff in the underlying action." *Int'l Ins. Co. v. Rollprint Packaging Prod., Inc.*, 312 Ill. App. 3d 998, 1007 (2000). Another reason is that the "state has an interest in having an insured adequately represented in the underlying litigation." *Cincinnati Companies v. W. Am. Ins. Co.*, 183 Ill. 2d 317, 329 (1998). In line with these principles and for the following reasons, the Court concludes that the Complaint potentially gives rise to coverage, which requires Austin Mutual to defend Plaintiffs.

1. **"Damages"**

In assessing whether the phrase "because of bodily injury" applies here, the Court finds Judge Hart's thorough opinion in *Ace Am. Ins. Co. v. RC2 Corp.* persuasive. There too, was a duty-to-defend case about the phrase "damages" "because of" "bodily injury." 568 F. Supp. 2d 946, 949 (N.D. Ill. 2008) (emphasis added), *rev'd and remanded on other grounds*, 600 F.3d 763 (7th Cir. 2010).[1] Instead of exposure to the Virus, the dispute there dealt with lead exposure.

---

[1] Although the Seventh Circuit ultimately reversed Judge Hart's decision, it did so because the occurrence did not take place within the coverage territory of the policy. *See Medmarc Cas. Ins. Co. v. Avent Am.,*

5

In *RC2*, Judge Hart concluded that the term "damages" in Illinois does not just mean money but can also include the cost to comply with a mandatory injunction. *Id.* According to Judge Hart, the term is given a "broad, nontechnical meaning that is not limited to compensatory damages and can include equitable relief." *Id.* at 955. Judge Hart's analysis was spot-on because not one, but two, Illinois Supreme Court decisions confirm that the cost to comply with a mandatory injunction is a "damage" for the purpose of an insurance policy like this one. *See Cent. Ill. Light Co. v. Home Ins. Co.*, 213 Ill. 2d 141, 160 (2004); *Outboard Marine Corp. v. Liberty Mut. Ins. Co.*, 154 Ill. 2d 90, 116 (1992). Applying these cases, Judge Hart concluded that where the underlying lawsuit sought medical monitoring costs related to lead exposure, those costs were "damages" because the Defendant was required to expend "funds to remediate bodily injury in the form of *exposure to* lead." *RC2*, 568 F. Supp. 2d at 956 (emphasis added).

Applying Judge Hart's reasoning here, the mandatory injunction sought by the *Massey* plaintiffs is also a "damage" because it would require Plaintiffs to expend money to remediate the continuous and ongoing exposure to the Virus.

### 2. "Because of"

Having concluded that the *Massey* lawsuit involves "damages," we turn to whether the damages are "because of" "bodily injury." Like the word "damages,"

---

*Inc.*, 612 F.3d 607, 616 n.3 (7th Cir. 2010) (citing *Ace American Ins. Co. v. RC2 Corp., Inc., et al.*, 600 F.3d 763 (7th Cir.2010)).

Illinois law in this context also accords the phrase "because of" a broad, non-technical meaning. *See Travelers Ins. Companies v. Penda Corp.*, 974 F.2d 823, 830-831 (7th Cir. 1992). The Policies do not say "proximately because of"—they merely say "because of," so simple "but for" causation is enough. *See Auto-Owners Ins. Co. v. Se. Car Wash Sys.*, 184 F. Supp. 3d 625, 631 n.5 (E.D. Tenn. 2016). As applied here, Plaintiffs have adequately alleged "but for" causation because "but for" the *Massey* plaintiffs' actual contraction of COVID-19, the Plaintiffs would not have to incur "damages" to comply with a mandatory injunction.

Austin Mutual responds that policies like this one are meant to cover damages paid to a third-party—not damages to the insured. But here this argument is "untethered to any language in the policy" and is foreclosed by Seventh Circuit precedent. *See Cincinnati Ins. Co. v. H.D. Smith, L.L.C.*, 829 F.3d 771, 774 (7th Cir. 2016). In *Cincinnati Ins. Co.*, the Seventh Circuit held that the state of West Virginia's costs to address the opioid epidemic were "because of" bodily injury even though the state of West Virginia itself suffered no bodily injury. 829 F.3d 771, 774-45 (7th Cir. 2017). To support this conclusion, the Seventh Circuit reasoned that "suits seeking damages '*because of* bodily injury' . . . provide[] broader coverage than one that covers only damages '*for* bodily injury.'" *Id.* at 774 (emphasis in original). The Seventh Circuit also distinguished other cases where there was "no claim of bodily injury in any form." *Id.* at 775 (citing *Medmarc Cas. Ins. Co.*, 612 F.3d at 616). Notably, there are at least two forms of claimed bodily injury here, in that the *Massey* plaintiffs contracted

7

COVID-19, and third-persons like McDonald's customers are continuously exposed to the Virus.

In sum, Plaintiffs have met their burden of alleging that they might be on the hook for "damages" "because of" or "but for" Plaintiffs' employees contracting COVID-19. That is a plausible interpretation of the Policies and creates the potential for coverage.

### 3. "Bodily Injury"

In analyzing "bodily injury" the Court observes that three of the *Massey* plaintiffs—Taynarvis Massey, Sujey Figueroa, and Truvon Turner—contracted COVID-19 or fell ill and experienced symptoms consistent with COVID-19. No one disputes—or even could dispute—that this is a "bodily injury." And as the phrase "because of" is accorded such a broad meaning, the Court's analysis could end here. *See Cincinnati Ins. Co. v. E. Atl. Ins. Co.*, 260 F.3d 742, 745 (7th Cir. 2001) (observing that plaintiffs must only make a coverage argument "*at least arguably* within one or more of the categories of wrongdoing that the policy covers.") (emphasis added). Indeed, "but for" the *Massey* plaintiffs' demonstrable sickness, Plaintiffs would not have to expend "damages" to comply with the mandatory injunction.

The more vexing and intellectually abstract question is what the mandatory injunction would do to help or remediate the injuries to Taynarvis Massey, Sujey Figueroa, Truvon Turner, and other McDonald's workers and employees. After all, don't those people already have COVID-19? This argument has some support in

Illinois in that "damages" generally must have a remedial purpose. *See Cent. Ill. Light Co.*, 213 Ill. 2d at 160.

This part is where Plaintiffs' case may be weakest, but Plaintiffs have at least alleged that the Policies potentially cover exposure to the Virus in addition to the contraction of COVID-19. According to the Seventh Circuit, this exposure-contraction distinction is "exactly the distinction" that district courts should focus on—just as Judge Hart did in *RC2*. *Medmarc Cas. Ins. Co.*, 612 F.3d at 616. This is because under Illinois law, "exposure to potentially harmful contaminants [can] constitute[] bodily injury even without manifestations of sickness or disease." *RC2*, 568 F. Supp. 2d at 955 (citing *Zurich Ins. Co. v. Raymark Indus., Inc.*, 118 Ill.2d 23 (1987)); *see also Baughman v. United States Liab. Ins. Co.*, 662 F. Supp. 2d 386, 395-96 (D.N.J. 2009).

Applied here, if the *Massey* plaintiffs prevail and win entry of a mandatory injunction in state court, Plaintiffs would have to spend money to prevent the Virus from entering the restaurants, and to eliminate or mitigate its presence in the restaurants. Those strategies would decrease the risk of bodily injury from exposure to the Virus and from the possibility of reinfection. For example, the increased deployment of hand sanitizer quite literally kills the Virus. Increased training on handwashing likewise would result in the Virus being incrementally removed from the premises. And other measures, like supplying face masks, prevent the spread of and exposure to the Virus.

One additional point: The Court is also convinced by Plaintiffs' argument that Austin Mutual could have explicitly included a virus exclusion had it intended to not

9

provide coverage for "bodily injury" caused by a virus. *See* Dkt. #28 at 10-12. After all, other insurance companies have done so. *Id.* But, absent such an exclusion, Austin Mutual has not established that an otherwise broad CGL policy like this one does not foreseeably cover the business liability at issue here.

Putting it all together, if the *Massey* plaintiffs prevail and win the entry of a mandatory injunction, that will only be "because of" the *Massey* plaintiffs' contraction of COVID-19—an indisputable bodily injury. Alternatively, another potential avenue for coverage is that exposure to the Virus is itself a "bodily injury" that Plaintiffs would be forced to expend "damages" to remedy. Either argument may not wow everyone with its brilliance, and Austin Mutual might even have the better interpretation. But this is not a dispute about the better interpretation: it is a dispute about a potential and legally defensible interpretation. Given the discussion above, no one can credibly dispute that Plaintiffs' Complaint raises a potential argument for coverage. The Court therefore denies Austin Mutual's Motion accordingly.[2]

## CONCLUSION

For the foregoing reasons, the Court denies Austin Mutual's Motion to Dismiss. Telephonic Status is set for 3/2/2021 at 10:00a.m. It is so ordered.

Dated: 2/22/21

---

[2] In response to the Court's request for supplemental briefing, Austin Mutual makes brand-new arguments about the Policies' Worker's Compensation Exclusion and Employer's Liability Exclusion. But Austin Mutual waived these arguments by not making them in its original, limited Motion to Dismiss. *See Pursley v. City of Rockford*, 2019 WL 4918139, at *5 (N.D. Ill. 2019).

10

_____
Charles P. Kocoras
United States District Judge

11