**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| **MCDONALD'S CORPORATION,**<br>**MCDONALD'S USA, LLC,**<br>**LEXI MANAGEMENT, LLC,**<br>**and DAK4, LLC,**<br><br>      **Plaintiffs,**<br><br>v.<br><br>**AUSTIN MUTUAL INSURANCE**<br>**COMPANY,**<br><br>      **Defendant.**<br><hr>**AUSTIN MUTUAL INSURANCE**<br>**COMPANY,**<br><br>      **Counter-Plaintiff,**<br><br>v.<br>**MCDONALD'S CORPORATION,**<br>**MCDONALD'S USA, LLC,**<br>**LEXI MANAGEMENT, LLC,**<br>**and DAK4, LLC,**<br><br>      **Counter-Defendants.** | No. 20-cv-5057<br><br>Judge Charles P. Kocoras<br><br>Magistrate Judge Jeffrey T. Gilbert |

**<u>AUSTIN MUTUAL INSURANCE COMPANY'S FIRST</u>**
**<u>AMENDED COUNTERCLAIMS FOR DECLARATORY JUDGMENT</u>**

Defendant/Counter-Plaintiff Austin Mutual Insurance Company ("Austin Mutual") hereby files its First Amended Counterclaims for Declaratory Judgment against Plaintiffs/Counter-Defendants McDonald's Corporation, McDonald's USA, LLC, Lexi Management, LLC, and DAK4, LLC (collectively, the "Insureds") and in support thereof, states as follows:

## NATURE OF THE ACTION

1.      Austin Mutual brings this declaratory judgment action to obtain a judicial finding that it has no duty to defend the Insureds in *Massey, et al. v. McDonald's Corp., et al.*, Case No. 2020 CH 04247, in the Circuit Court of Cook County, Illinois (the *Massey* Lawsuit") under commercial general liability insurance policies issued to Lexi Management, LLC and DAK4, LLC (the "Policies").  Plaintiffs in the *Massey* Lawsuit are individuals claiming to be workers at McDonald's restaurants or persons living with those workers, and they seek to represent classes of individuals who have worked at the same restaurants since April 1, 2020 and those living with such workers.  The *Massey* Lawsuit asserts that the Insureds have not taken adequate measures to limit employees' risk of exposure to a 2019 novel coronavirus (2019-nCoV) (the "Virus") that can lead to contracting COVID-19, an infectious respiratory disease, despite the Insured's knowledge of these risks and of appropriate safety precautions. The Complaint in the *Massey* Lawsuit seeks injunctive relief to require the Insureds to take steps to enhance the safety of the work environment and mitigate future risks to employees from contracting COVID-19 in the future.  Because the allegations of the *Massey* Complaint make clear that there is no possibility that the claims asserted therein are covered under the Policies, Austin Mutual has no duty to defend.

2.      First, the *Massey* Complaint does not allege claims on which the Insureds may become obligated to pay "damages because of 'bodily injury,'" as required by the Policies. "Bodily injury" under the Policies refers to sickness or disease, but the *Massey* Complaint seeks no relief or remedy of any kind to redress any purported sickness, disease or mental anguish any of those plaintiffs might have allegedly sustained.  The *Massey* Complaint seeks no monetary damages, nor any injunctive relief directed at diagnosing or treating COVID-19, or remediating any alleged consequence for anyone who has contracted COVID-19.  Indeed, it seeks *only* a

declaration and injunctive relief to require the Insureds take measures to prophylactically mitigate the future risks of exposure to COVID-19—i.e., to provide protective gear such as gloves and masks without requiring workers to reuse them in an unsafe manner, supply hand sanitizer, require workers and customers to wear face coverings, inform workers if a fellow worker has been diagnosed with COVID-19, and provide workers with accurate information regarding COVID-19 and training on preventative measures such as hand washing. These allegations in the *Massey* Complaint do not create an obligation for Austin Mutual to defend the *Massey* Lawsuit.

3.     Second, the *Massey* Complaint does not allege "bodily injury" that is the result of an "occurrence." Under the Policies, an "occurrence" is defined as an accident. The occurrence here—the Insureds' failure to take steps to control the risk of the workers' exposure to COVID-19—is not an accident. By the time the *Massey* Complaint was filed, COVID-19 was recognized as a global pandemic that reached all corners of the globe, and the risks of the disease were well known. Likewise, the alleged risks of contracting COVID-19 as a result of inadequate workplace safety precautions were also well known, both to the public in general and to the Insureds specifically. Because the alleged risks described in the *Massey* Complaint were the natural and foreseeable consequences of the allegedly insufficient safety precautions taken by the Insureds, even if the *Massey* Complaint had alleged "bodily injury" (which it has not), it was not the result of an accident and is not covered under the Policies.

4.     Third, the very risks from COVID-19 and exposure to the Virus that the *Massey* Complaint alleges are the injuries resulting from the Insureds' failures to implement adequate safety measures were known – at least in part – to the Insureds prior to the inception of the Policies on March 1, 2020. Because the Policies do not extend coverage to "bodily injury" if the

Insured knew that the alleged injury had occurred, in whole or in part, before the Policies commenced, and because the Insureds were aware of the risks of COVID-19 and at least in part the safety precautions that businesses such as theirs should take before the Policies became effective, even if the *Massey* Complaint had alleged "bodily injury" (which it has not), it is deemed to have been known, and falls outside the coverage of the Policies.

5.     Fourth, even if the *Massey* Complaint had alleged "bodily injury" (which it has not), coverage for the *Massey* Complaint is precluded by the Employers' Liability exclusion, which provides that there will be no coverage for alleged "bodily injury" of an employee of the Insured or his family members, if such alleged injury occurred during the course and scope of the employees' work for the Insured or while performing duties related to the conduct of the Insureds business.  Here, the entirety of the *Massey* Complaint addresses the alleged risks that workers face while performing their duties at McDonald's restaurants.  Those claims fall within the clear terms of the Employers' Liability exclusion.

6.     Fifth, even if the *Massey* Complaint had alleged "bodily injury" (which it has not), coverage for the *Massey* Complaint is precluded by the Employment-Related Practices Exclusion endorsement.  The decisions and actions by the Insureds regarding face masks, social distancing, hand sanitizer, surface cleaning, and monitoring the COVID-19-related health status of employees for the purposes of informing other employees, are all policies and practices of the Insureds specific to the employer-employee relationship and the work environment created by the Insureds for their employees.

7.     Finally, even if the *Massey* Complaint had alleged "bodily injury" (which it has not), the exclusion in the Policies for "bodily injury" that is "expected or intended from the standpoint of the insured" also precludes coverage for the *Massey* Complaint.  The *Massey*

Complaint alleges that the plaintiffs are injured because they face an increased risk of exposure to the Virus, allegedly as a result of failures by the Insureds to implement basic safety measures recommended by the U.S. Center for Disease Control and Prevention ("CDC") and other experts and allegedly as called for by McDonald's corporate directives. The expected result of the alleged failure to implement and enforce safety precautions designed specifically to limit the spread of the Virus is necessarily an increased risk from exposure to the Virus. As a result, the claims in the *Massey* Complaint are excluded by the plain language of the Policies.

## JURISDICTION AND VENUE

8.    Austin Mutual is an insurance company organized under the laws of the state of Minnesota with its principal place of business in Maple Grove, Minnesota.

9.    Upon information and belief, McDonald's Corporation is a Delaware corporation with its principal place of business in Chicago, Illinois. McDonald's Corporation has already appeared in this action.

10.    Upon information and belief, McDonald's USA, LLC is a Delaware limited liability company with its principal place of business in Chicago, Illinois. Upon information and belief and as pled in its Complaint, McDonald's USA's sole member is McDonald's Corporation. McDonald's USA, LLC franchises McDonald's restaurants in the United States. McDonald's USA, LLC has already appeared in this action. McDonald's Corporation and McDonald's USA, LLC are collectively referred to herein as "McDonald's."

11.    Upon information and belief, Lexi Management, LLC ("Lexi") is an Illinois limited liability company with its principal place of business in Chicago, Illinois. Upon information and belief and as pled in its Complaint, Lexi's members are Tonnette Williams and her minor daughter, both citizens of Illinois. Until approximately June 15, 2020, Lexi owned and

operated a McDonald's franchise located at 207 E. 35th Street in Chicago, Illinois. Lexi has already appeared in this action.

12.     Upon information and belief, DAK4, LLC ("DAK4") is an Illinois limited liability company with its principal place of business in Itasca, Illinois. Upon information and belief and as pled in its Complaint, DAK4's members are John Dakajos, a citizen of Illinois, and the John Dakajos Children's Trust. Upon information and belief and as pled in DAK4's Complaint, the trustees and beneficiaries of the John Dakajos Children's Trust are citizens of Illinois. DAK4 owns and operates a McDonald's franchise located at 10320 S. Kedzie Avenue in Chicago, Illinois. DAK4 has already appeared in this action.

13.     The amount in controversy in this case exceeds the sum or value of $75,000, exclusive of interests and costs.

14.     Accordingly, this Court has diversity jurisdiction over this action under 28 U.S.C. § 1332.

## BACKGROUND
## CORONAVIRUS AND COVID-19

15.     The dispute between Austin Mutual and the Insureds arises in the context of the ongoing global pandemic caused by the Virus, which came to be referred to as severe acute respiratory syndrome coronavirus 2 (SARS-CoV-2). Persons exposed to the Virus run the risk of infection and contraction of the COVID-19 disease. Only some of those exposed to the Virus will actually contract COVID-19, and individuals are not injured from exposure to the Virus unless they contract the disease.

16.     On January 6, 2020, the CDC issued its first travel notice for travelers to Wuhan, China, advising that they avoid living or dead animals, animal markets, and contact with sick

people, and that they wash hands often with soap and water. The New York Times also ran its first story on the outbreak of the Virus in China.[1]

17.     On January 8, 2020, the CDC indicated that it was "closely monitoring" the outbreak in China and that it had established an Incident Management Structure and was using the alert to "inform[] state and local health departments and health care providers about this outbreak and request[] that health care providers ask patients with severe respiratory disease about travel history to Wuhan City."[2]

18.     On January 17, 2020, the CDC announced that it "will implement enhanced health screenings to detect ill travelers traveling to the United States on direct or connecting flights from Wuhan, China" at New York's John F. Kennedy International Airport, the San Francisco International Airport, and the Los Angeles International Airport.[3]

19.     On January 21, 2020, the CDC "confirmed the first case of 2019 Novel Coronavirus (2019-nCoV) in the United States in the state of Washington," involving a person who had recently returned from Wuhan, China.[4]

20.     On January 29, 2020, the U.S. Coronavirus Task Force was created, headed by Alex M. Azar II, the U.S. Secretary of Health and Human Services.

21.     On January 30, 2020, the CDC confirmed that the Virus "had spread between two people in the United States, representing the first instance of person-to-person spread with this new virus here."[5] The individuals were identified as Illinois residents.

---

[1] Wee, Sui-Lee; Wang, Vivian, "China Grapples With Mystery Pneumonia-Like Illness", The New York Times, Jan. 6, 2020.
[2] https://emergency.cdc.gov/han/HAN00424.asp
[3] https://www.cdc.gov/media/releases/2020/p0117-coronavirus-screening.html
[4] https://www.cdc.gov/media/releases/2020/p0121-novel-coronavirus-travel-case.html
[5] https://www.cdc.gov/media/releases/2020/p0130-coronavirus-spread.html

22.     On January 31, 2020, Secretary Azar declared that the Virus constitutes a public health emergency, retroactive to January 27, 2020.[6]

23.     Also on January 31, 2020, President Donald J. Trump issued an executive order blocking entry into the United States of any foreign nationals who had been in China in the previous fourteen days, effective February 2, 2020.[7]

24.     On February 26, 2020, the CDC confirmed "an infection with the virus that causes COVID-19 in California in a person who reportedly did not have relevant travel history or exposure to another known patient with COVID-19," which the CDC noted would be the first instance of community spread of COVID-19.[8]

25.     On February 26, 2020, the CDC also issued an "Interim Guidance for Businesses and Employers to Plan and Respond to 2019 Novel Coronavirus (2019-nCoV)."[9]

26.     Included in the February 26, 2020 guidance were recommendations to separate sick employees, encourage symptomatic employees to stay home, to instruct employees to wash their hands with soap and water for at least 20 seconds or to use a hand-sanitizer with at least 60-95% alcohol.  The CDC's interim guidance further recommended providing soap and water as well as alcohol-based hand rubs in the workplace.

27.     Regarding personal protective equipment ("PPE"), after noting that "[e]mployers are obligated to provide their workers with PPE needed to keep them safe while performing their jobs[,]" the CDC's February 26 guidance recommended that "medium exposure risk" jobs, such as restaurants, should "[c]onsider offering face masks to ill employees and customers to contain

---

[6] https://www.phe.gov/emergency/news/healthactions/phe/Pages/2019-nCoV.aspx
[7] https://trumpwhitehouse.archives.gov/presidential-actions/proclamation-suspension-entry-immigrants-nonimmigrants-persons-pose-risk-transmitting-2019-novel-coronavirus/
[8] https://www.cdc.gov/media/releases/2020/s0226-Covid-19-spread.html
[9] https://stacks.cdc.gov/view/cdc/85488

respiratory secretions until they are able leave the workplace" or, if masks were unavailable due to supply issues, face shields.

28.     Reinforcing the CDC's Guidance, on March 9, 2020 Illinois Governor J.B. Pritzker issued a Gubernatorial Disaster Proclamation.[10]  In his Proclamation, Governor Pritzker noted that the CDC recommendations included isolation for symptomatic individuals, regular hand washing or hand sanitizing, and cleaning frequently touched surfaces.

29.     Further underscoring the importance of workplace safety and cleanliness, in early March the Occupational Safety and Health Administration ("OSHA") issued its "Guidance on Preparing Workplaces for COVID-19."[11]  In its guidance, OSHA noted that the Virus was thought to spread between people who are in close contact (distances less than 6 feet) and as such recommended that employers "explore whether they can establish policies and practices…to increase physical distance among employees and between employees and others…."  OSHA's guidance also reinforced the importance of hand washing and using hand-sanitizer.

30.     On March 11, 2020, President Trump signed an executive order barring entry into the United States of any foreign nationals who had visited the Schengen Area (defined to include 26 European states) in the fourteen days prior to their attempted entry into the United States.[12]

31.     On March 13, 2020, President Trump declared COVID-19 a National Emergency[13] and, on March 16, 2020, issued "The President's Coronavirus Guidelines for

---

[10] https://www2.illinois.gov/sites/gov/Documents/CoronavirusDisasterProc-3-12-2020.pdf
[11]  https://www.osha.gov/sites/default/files/publications/OSHA3990.pdf
[12] https://trumpwhitehouse.archives.gov/presidential-actions/proclamation-suspension-entry-immigrants-nonimmigrants-certain-additional-persons-pose-risk-transmitting-2019-novel-coronavirus/
[13] https://trumpwhitehouse.archives.gov/presidential-actions/proclamation-declaring-national-emergency-concerning-novel-coronavirus-disease-covid-19-outbreak/

America: 30 Days to Slow the Spread"[14] of COVID-19. The President's guidance again affirmed that washing hands and disinfecting frequently used items was key to slowing the spread of the Virus.

32.     On March 19, 2020, the Illinois Department of Public Health ("IDPH") issued its Guidance for Food Establishments relating to COVID-19.[15] Among the IDPH's recommendations for businesses that remained open was hand washing and wearing single-use disposable gloves.

33.     In Illinois, Gov. Pritzker issued the first Stay at Home Order on March 20, 2020.[16] Pursuant to this order, restaurants were permitted to stay open for carry-out and delivery service only. Further, any businesses that remained open were required to designate six-foot distances to ensure compliance with Social Distancing Requirements and ensure that hand sanitizer and sanitizing products were readily available to both employees and customers.

34.     As early as April 4, 2020, the CDC recommended wearing a face covering (mask) in all public settings where social distancing was difficult to maintain.[17] Specifically, the CDC stated:

> It is critical to emphasize that maintaining 6-feet social distancing remains important to slowing the spread of the virus. CDC is additionally advising the use of simple cloth face coverings to slow the spread of the virus and help people who may have the virus and do not know it from transmitting it to others.

35.     Further underscoring the importance of the CDC's recommendation that face coverings be worn in all public settings, on April 6, 2020 the IDPH issued its "Guidance on the

---

[14] https://trumpwhitehouse.archives.gov/wp-content/uploads/2020/03/03.16.20_coronavirus-guidance_8.5x11_315PM.pdf
[15] https://web.archive.org/web/20201017031212/https://www.dph.illinois.gov/sites/default/files/20200319_COVID-19_Closure-Opening_Guidance_for_Food_Establishments.pdf
[16] https://www2.illinois.gov/pages/executive-orders/executiveorder2020-10.aspx
[17] https://web.archive.org/web/20200404023508/https://www.cdc.gov/coronavirus/2019-ncov/prevent-getting-sick/cloth-face-cover.html

Use of Masks by the General Public,"[18] which recommended that "[a]ll Illinoisans should wear as mask or face covering when they must leave their home or report to work for essential operations and they either cannot or it is impractical to maintain 6 feet of physical distance between themselves and others."

36.     On April 30, 2020, Gov. Pritzker mandated that masks be worn in all public settings, including in restaurants.[19]  As part of this mask-mandate, Gov. Pritzker mandated that all essential businesses that remained open, including any restaurants open for carry-out, "provide face coverings to all employees who are not able to maintain a minimum six-foot social distance at all times[.]"

## MCDONALD'S RESPONSE TO COVID-19

37.     McDonald's has stated that its response to COVID-19 has been informed by its own health experts and the CDC, indicating that McDonald's has remained informed as to federal and local guidelines concerning COVID-19, as well as the risks associated with the Virus in its operations, and that McDonald's has worked closely with its franchisees in this area. Indeed, its public statements and actions reflect this knowledge.

38.     In the McDonald's 2019 annual report issued February 26, 2020, McDonald's CEO addressed McDonald's response to the emerging COVID-19 situation.  He first stressed that the "strength of our business is rooted deeply in alignment across the three legs of our system—company employees, independent franchisees and global suppliers. Our top priority is to protect the health and safety of our people and customers. That has guided our response to date, through actions like implementing paid sick leave in the U.S. and enhancing hygiene

---

[18] https://www.dph.illinois.gov/sites/default/files/SIREN%20Memo%20-%20IDPH%20Guidance%20for%20the%20Use%20of%20Masks%20by%20the%20General%20Public%2004.06.2020.pdf#overlay-context=covid19/community-guidance/mask-use
[19] https://www2.illinois.gov/Pages/Executive-Orders/ExecutiveOrder2020-32.aspx

measures at all company-owned restaurants, as well as closing in-restaurant dining where necessary, and working with franchisees to support financial liquidity. We are supporting each other through this crisis, and while we will certainly have to make some difficult decisions as the situation evolves, we will work through these together, as one McDonald's system."

39.    Consistent with that message, on March 16, 2020, McDonald's closed indoor dining at its company-owned restaurants nationwide.[20] Reflecting the fact that McDonald's was in close contact with its franchisees regarding the response to COVID-19, the statement announcing this decision stated that "franchisees are strongly encouraged to adopt similar operations procedures while keeping the needs of their people and communities at the center of their decisions. This guidance is supported by franchisee leadership and is expected to be adopted by the majority of franchisees."

40.    In an SEC filing on March 16, 2020, McDonald's recognized that "[s]everal governments around the world have declared a State of Emergency and/or closed or partially closed all restaurants."

41.    At a March 17, 2020 press briefing of the White House Coronavirus Task Force, President Trump stated that he had spoken that morning with executives from America's fast-food industry, including McDonald's, about the important role of drive-through, pick-up and delivery food services. The President also noted that the government was asking "everyone to work at home, if possible, postpone unnecessary travel, and limit social gatherings to no more than 10 people."[21]

---

[20] https://corporate.mcdonalds.com/corpmcd/en-us/our-stories/article/OurStories.covid19-update-us.html

[21] https://www.c-span.org/video/?470426-1/president-trump-urges-states-follow-coronavirus-guidelines

42.     In an SEC filing on March 21, 2020, McDonald's stated that in the face of the COVID-19 pandemic, "the Company has taken several steps focused on the safety and well-being of restaurant crew, franchisees, employees, and customers."

43.     Further demonstrating McDonald's awareness of the serious nature of the Virus, the risks it posed, and the need to take appropriate safety precautions, on March 23, 2020 McDonald's released a statement on "What We're Doing to Support Our Customers, Employees and Communities[.]"[22]  In its statement, McDonald's noted that it had already "taken significant precautions to protect our customers and employees from COVID-19: closing many of our dine-in sections, closing all play areas, increasing cleanings, particularly in high-traffic areas, and making hand sanitizer available in our restaurants."

44.     On April 1, 2020, McDonald's announced "Additional Precautionary Measures for Restaurant Employee Health and Well-Being" related to COVID-19.[23]  In this press release, McDonald's committed to adopting social distancing guidelines, increasing cleanings, and making hand sanitizer available in all of its restaurants.  The statement also indicated that McDonald's was "partnering with our independent franchisees to take additional steps to ensure restaurant employees are feeling their best at the beginning of each shift," including a series of questions to screen for COVID-19 related health issues.

45.     In an SEC filing on April 8, 2020, McDonald's stated that, in the face of the coronavirus outbreak, "[o]ne thing that has not changed … is McDonald's focus on protecting the health and safety of our people and our customers. We are implementing measures across markets to keep customers and crew safe, such as contactless Drive-thru and Delivery, social

---

[22] https://corporate.mcdonalds.com/corpmcd/en-us/our-stories/article/OurStories.we-support-community.html
[23] https://corporate.mcdonalds.com/corpmcd/en-us/our-stories/article/ourstories.safety-measures.html

distancing guidelines, protective equipment for crew and enhanced hygiene and cleaning procedures."

46.     In response to and demonstrating its awareness of the State and Federal Guidance, on April 16, 2020 McDonald's issued a statement on "Keeping Safety Top of Mind for Restaurant Employees and Communities."[24]  This press release noted that McDonald's had secured over 100 million ono-medical grade masks for its employees and was encouraging its employees to wear DIY masks if masks were not available.

47.     Reflecting its continued awareness of the importance of mask wearing to preventing the spread of COVID-19, on May 7, 2020, McDonald's published its statement on "How McDonald's Is Prioritizing Health, Safety and Community During the Outbreak."[25]  In this release, McDonald's noted that it had committed to wellness checks, social distancing, masks and gloves for employees, and protective barriers.

## THE *MASSEY* LAWSUIT

48.     Plaintiffs Taynarvis Massey, Maria Villasenor, Noemi Villasenor, Sujey Figueroa, Edwin Pilego, Truvon Turner, Jayvonna Gardley, Ryan Freeman and Joyce Freemen (hereinafter the "*Massey* Plaintiffs") filed a Complaint for Injunctive Relief against McDonald's Corporation, McDonald's USA, LLC, McDonald's Restaurants of Illinois, Inc., Lexi Management LLC, and DAK4, LLC (collectively, the "*Massey* Defendants") in the Circuit Court of Cook County, Illinois, Case No. 2020-CH-04247 (the "*Massey* Lawsuit").  A true and accurate copy of the complaint in the *Massey* Lawsuit is attached hereto as "Exhibit 1."

---

[24] https://corporate.mcdonalds.com/corpmcd/en-us/our-stories/article/OurStories.safety-top-mind.html
[25] https://corporate.mcdonalds.com/corpmcd/en-us/our-stories/article/OurStories.safety-standard.html

## THE *MASSEY* PLAINTIFFS

49.     Plaintiff Taynarvis Massey alleges that she works at the McDonald's restaurant at 207 E. 35 St., Chicago, owned and operated by Lexi.  Massey alleges that she tested positive for COVID-19 on April 22, 2020, but she does not allege that she contracted COVID-19 at the McDonald's where she works.

50.     Plaintiff Ryan Freeman alleges that he works at the McDonald's restaurant at 207 E. 35 St., Chicago, owned and operated by Lexi.  Freeman does not allege that he has contracted COVID-19 or had any symptoms consistent with COVID-19.

51.     Plaintiff Joyce Freeman alleges that she is Ryan Freeman's mother and that Ryan Freeman lives with her.  Joyce Freeman does not allege that she has been to any McDonald's restaurants, that she has been exposed to the coronavirus, or that she has contracted COVID-19 or had any symptoms consistent with COVID-19.

52.     Plaintiff Maria Villasenor alleges that she works the McDonald's restaurant at 2438 W Cermak Rd, Chicago, which is alleged to be a "corporate store" operated by McDonald's Restaurants of Illinois, Inc.  Villasenor does not allege that she has contracted COVID-19 or had any symptoms consistent with COVID-19.

53.     Plaintiff Noemi Villasenor alleges that she is Maria Villasenor's daughter and lives with her.  Noemi Villasenor does not allege that she has been to any McDonald's restaurants, that she has been exposed to the coronavirus, or that she has contracted COVID-19 or had any symptoms consistent with COVID-19.

54.     Plaintiff Truvon Turner alleges that he works at the McDonald's restaurant at 10320 S. Kedzie Ave., Chicago, owned and operated by DAK4.  Turner alleges that he felt sick in late April 2020 and tested negative for COVID-19, but was nonetheless advised to self-

quarantine because he was exhibiting the symptoms of the infection. Turner does not allege that he contracted COVID-19 at the McDonald's where he works.

55. Plaintiff Jayvonna Gardley alleges that she is Truvon Turner's girlfriend and lives with him full-time. Jayvonna Gardley does not allege that she has been to any McDonald's restaurants, that she has been exposed to the coronavirus, or that she has contracted COVID-19 or had any symptoms consistent with COVID-19.

56. Plaintiff Sujey Figueroa alleges that she works at the McDonald's restaurant at 3867 S. Archer Ave., Chicago, which is alleged to be a "corporate store" operated by McDonald's Restaurants of Illinois, Inc. Figueroa alleges that she was sick with symptoms consistent with COVID-19 in mid-March 2020, but that she was unable to be tested to confirm whether she was infected. Figueroa does not allege that she contracted COVID-19 at the McDonald's where she works.

57. Plaintiff Edwin Pliego alleges that he is Sujey Figueroa's son and lives with her. Edwin Pliego does not allege that he has been to any McDonald's restaurants, that he has been exposed to the coronavirus, or that he has contracted COVID-19 or had any symptoms consistent with COVID-19.

58. The *Massey* Complaint also seeks to bring claims on behalf of a class of all workers who worked at one of the identified McDonald's restaurants since April 1, 2020 and all persons who cohabitated with those workers during the same period.

**The *Massey* Complaint's Allegations Regarding the Virus**

59. The *Massey* Complaint lays out a series of allegations regarding the nature of the Virus and expert and government efforts to provide guidance to the public and to employers regarding safety for employees and members of the public with whom they interact.

16

60.    The *Massey* Complaint alleges that "[t]he most common ways for COVID-19 to spread are through: (1) close interaction with an infected person that allows the virus to spread through airborne particles or via aerosolized droplets, which are secretions from talking, coughing and sneezing; or (2) contact with a contaminated surface."  Ex. 1, *Massey* Comp. ¶ 29. It alleges that "[s]pread is more likely when people are in close contact with one another for sustained periods of time (i.e., within about 6 feet of each other for longer than 10 minutes)." Ex. 1, *Massey* Comp. ¶ 30.

61.    According to the *Massey* Complaint, the CDC and others "have recommended that all individuals take steps to avoid close contact with others, even those who may not appear infected, to avoid transmission—a process known as 'social distancing.'"  Ex. 1, *Massey* Comp. ¶ 31.

62.    The *Massey* Complaint alleges that the World Health Organization declared COVID-19 to be a global pandemic on March 11, 2020, followed on March 13, 2020 by a declaration of a national state of emergency by President Trump.  Ex. 1, *Massey* Comp. ¶¶ 34-35.

63.    The *Massey* Complaint further alleges that "[t]he World Health Organization, the CDC, and virtually every level of government have recognized that the only way to minimize casualties from COVID-19 is to slow the disease's spread, primarily by limiting human-to-human contact or, where that is impossible, taking other preventative measures."  Ex. 1, *Massey* Comp. ¶ 36.

64.    The *Massey* Complaint describes the potential exposure to the Virus that the *Massey* Plaintiffs allegedly face because of the nature of their work at McDonald's, citing the CDC's statement that "potential sources of exposures for food retail workers 'include close contact for prolonged periods of time with a customer with COVID-19 and touching your nose,

mouth, or eyes after handling items, cash, or merchandise that customers with COVID-19 have touched.'" Ex. 1, *Massey* Comp. ¶ 38. The *Massey* Complaint alleges that because they cannot distance themselves from their co-workers, "it is all the more important for workers to have access to necessary personal protective equipment." Ex. 1, *Massey* Comp. ¶ 39.

65.     The *Massey* Complaint alleges that Illinois Governor Pritzker issued an executive order on April 30 that extended his prior executive order dated March 20, which orders required, with certain exceptions, that individuals remain at home; individuals wear a face covering in public; retail stores designated as essential and remaining open must provide face coverings to employees and inform customers about social distancing; and retail stores designated as essential and remaining open must take steps to enforce social distancing, provide hand sanitizer, establish separate hours for vulnerable populations and provide face coverings and other personal protective equipment. Ex. 1, *Massey* Comp. ¶ 40.

66.     Following Governor Pritzker's April 30 executive order, the *Massey* Complaint alleges that "the Health Commissioner for the City of Chicago reissued an order implementing the Governor's stay-at-home order" on May 1, 2020, which required those in Chicago to "practice a strict and disciplined adherence to stay-at-home and social distancing requirements." Ex. 1, *Massey* Comp. ¶ 41

**CDC Guidance to Food Retailers Described in the *Massey* Complaint**

67.     The *Massey* Complaint also alleges the details of CDC guidance for food retailers and generally for all businesses remaining open during the pandemic. As alleged, the CDC recommended several steps for food retailers, including encouraging sick employees to stay home, encouraging those diagnosed with COVID-19 not to return to work early; providing employees accurate information about COVID-19; implementing policies to limit contact with

customers and contact with other workers for those employees who are at higher risk; training employees on proper hand washing and preventative measures; providing access to soap, water, and hand sanitizer at stations spread around the business; increasing the distance between workers; providing signage to remind everyone to distance at least 6 feet; placing floor decals to guide customers on distancing; creating spacing in employee breakrooms or using other available space for overflow of employees on breaks; providing warning posters encouraging workers to stay home when they are sick and to practice good hygiene; providing tissues and no-touch disposal receptacles for employees; providing wipes or cleaners to allow employees to wipe down surfaces frequently; providing flexible sick leave and other supportive policies; providing information on who to contact if the employee is sick and information on co-workers, consistent with the ADA, who have been diagnosed with COVID-19 in order to inform employees on possible exposure; and rotating cashiers to allow those employees to frequently engage in handwashing.  Ex. 1, *Massey* Comp. ¶ 43.

68.    The *Massey* Complaint alleges that the CDC recommends that everyone should wear cloth face coverings in public situations where they cannot otherwise maintain social distancing.  Ex. 1, *Massey* Comp. ¶ 44.

## The *Massey* Allegations Regarding McDonald's Response to the Virus

69.    According to the *Massey* Complaint, "McDonald's issued a detailed statement about its response to COVID-19 on April 16, 2020," noting that it was "'committed to staying open'" while also recognizing its responsibility to "'proactively monitor the impact of the coronavirus, [and] continuously mak[e] changes to processes and restaurant operations with safety top of mind.'"  Ex. 1, *Massey* Comp. ¶ 47.  The statement purportedly stressed McDonald's focus on keeping employees safe.  Ex. 1, *Massey* Comp. ¶ 48.

70.     The *Massey* Complaint alleges that McDonald's statement indicated its "actions were 'informed by guidance from both our own third-party contagious disease experts and the CDC.'" Ex. 1, *Massey* Comp. ¶ 49.

71.     The *Massey* Complaint alleges, however, that the *Massey* Defendants "are failing to take important steps to contain the virus, such as providing adequate protective equipment, hand sanitizer, and safety training for employees, or enforcing safety protocols." Ex. 1, *Massey* Comp. ¶ 3.

72.     The *Massey* Complaint also alleges that "McDonald's has failed to take adequate steps in response to the pandemic. These stores are operating in disregard of expert recommendations and government guidance on how to best protect workers and customers from spread of the disease." Ex. 1, *Massey* Comp. ¶ 5.

73.     The *Massey* Complaint alleges that the McDonald's Defendants "have failed to take proper precautions to protect employees, including the worker plaintiffs, and the public, from the spread of COVID-19" and "have failed to implement government guidance and expert recommendations at the stores where the worker plaintiffs are employed." Ex. 1, *Massey* Comp. ¶ 59.

74.     Despite the CDC recommendations and McDonald's statements, the *Massey* Complaint describes how the restaurants at issue did not inform workers when others contracted COVID-19, did not provide basic information on the disease, did not implement social distancing, provided inadequate masks and other protective equipment, did not enforce the requirement that workers or customers wear masks, and failed to provide hand sanitizer. Ex. 1, *Massey* Comp. ¶¶ 65-98.

**The Alleged Harm to the *Massey* Plaintiffs**

75.     The *Massey* Complaint alleges that "COVID-19 is an infectious respiratory disease caused by a novel coronavirus.  *If a person is infected with the disease*, it can cause serious long-term health complications…."  Ex. 1, *Massey* Comp. ¶ 22 (emphasis added).

76.     The *Massey* Complaint alleges that as a result of the *Massey* Defendants' failure to provide a safe work environment, "Defendants have exposed McDonald's workers and the public to an increased risk of infection."  Ex. 1, *Massey* Comp. ¶ 59.

77.     The *Massey* Complaint further alleges that "[b]ecause COVID-19 is highly contagious, a worker or customer infected at a McDonald's restaurant is likely to spread the disease to others, possibly before showing symptoms.  Thus, the damage done by inadequate safety practices is not confined to the walls of a restaurant, but instead has broader public health consequences for the Chicago community, the State of Illinois, and the entire country."  Ex. 1, *Massey* Comp. ¶ 99.

78.     It is further alleged that "*[i]f customers are infected* because of a visit to a McDonald's restaurant, they will then return to their daily routine and begin infecting others, who will then infect others, and so on."  Ex. 1, *Massey* Comp. ¶ 104 (emphasis added).

79.     The *Massey* Complaint addresses the alleged risk to the worker plaintiffs, alleging that they "not only risk exposure to the disease and the potential deadly health consequences that come with it, but also risk being responsible for spreading the disease to their family members." For "Plaintiffs who are family members of McDonald's workers … their risk of exposure comes with living with a McDonald's worker."  Ex. 1, *Massey* Comp. ¶ 121.

80.     According to the *Massey* Complaint, "[i]f injunctive relief is not granted, Plaintiffs face a significant risk of irreparable harm in the form of physical and emotional

injuries from the continuing maintenance of the public nuisance. Indeed, *Plaintiffs are vulnerable* to severe bodily injury or death from infection caused by the unsafe environment in which they work." Ex. 1, *Massey* Comp. ¶ 123; *see also* Ex. 1, *Massey* Comp. ¶ 136 (same as to "continuing acts of negligence").

81.     The *Massey* Complaint alleges that the purported injuries to the *Massey* Plaintiffs include "exposure to the COVID-19 virus and *an increased likelihood of infection*." Ex. 1, *Massey* Comp. ¶ 133 (emphasis added).

82.     As to the *Massey* Plaintiffs who live with McDonald's workers, the *Massey* Complaint alleges that "they are likely to suffer the consequences of infections originating in the workplace. Not only may they be forced to care for—or grieve—a sick relative, but they themselves *risk infection* given the highly contagious nature of the disease." Ex. 1, *Massey* Comp. ¶ 4 (emphasis added).

**The Injunctive Relief Sought by the *Massey* Plaintiffs**

83.     The *Massey* Complaint seeks declaratory relief finding that the McDonald's defendants are maintaining a public nuisance and have violated Illinois law prohibiting negligence. Ex. 1, *Massey* Comp. at p. 32.

84.     The *Massey* Complaint further seek an injunction that requires the *Massey* Defendants to:

a.   Supply workers with adequate protective equipment, including face coverings and gloves;

b.   Cease and desist from forcing workers to reuse face coverings and gloves in a manner that makes them unsafe;

c.   Supply hand sanitizer for workers and customers entering the restaurant;

d.   Establish and enforce policies that require employees to wear face coverings during their shifts, and require customers entering the restaurant to wear face coverings;

  e. Monitor infections among workers and, if an employee experiences COVID-19 symptoms or is confirmed to be infected with COVID-19, inform fellow employees immediately of their possible exposure; and

  f. Provide employees with accurate information about COVID-19, how it spreads, and risks of exposure, and train employees on proper hand washing practice and other preventative measures established by the CDC.

Ex. 1, *Massey* Comp. at p. 32.

  85. The *Massey* Complaint makes it clear that the *Massey* Plaintiffs "seek only declaratory and injunctive relief to order Defendants to adhere to their legal responsibilities and provide a safe working environment." Ex. 1, *Massey* Comp. ¶ 6.

  86. The *Massey* Complaint concedes that "Plaintiffs seek no damages from the Franchisee Defendants." Ex. 1, *Massey* Comp. ¶ 146.

  87. While the *Massey* Complaint alleges that certain of the *Massey* Plaintiffs have contracted COVID-19 or had symptoms consistent with being infected (Ex. 1, *Massey* Comp. ¶¶ 66, 87, 94), the Complaint seeks no recovery or injunctive relief related to their alleged illness, such as monitoring of their ongoing health, or treatment for any medical conditions allegedly resulting from COVID19.

  **THE INSUREDS' REQUEST FOR A DEFENSE OF THE *MASSEY* LAWSUIT**

  88. Austin Mutual first received a notice of loss related to the *Massey* Lawsuit on or about May 20, 2020.

  89. In a letter dated June 12, 2020, Senior Counsel for McDonald's Corporation forwarded a copy of the *Massey* Complaint to the Claims Department at Austin Mutual. On behalf of McDonald's Corporation and McDonald's USA, the June 12 letter requested that Austin Mutual "acknowledge and undertake all insuring obligations…, including but not limited

to its duties to defend and indemnify McDonald's against the Massey Lawsuit" under the Policies.

90.     McDonald's counsel sent a similar letter dated June 12, 2020, to the Claims Department for American Family Mutual Insurance Company, S.I. ("American Family"), which is an affiliate of Austin Mutual, pursuant to policy 12XR461701.

91.     In-house counsel for American Family began having communications on behalf of Austin Mutual with McDonald's in-house counsel regarding coverage issues on or about July 2, 2020.  Discussions continued through July and August.

92.     In the course of the discussions, American Family and Austin Mutual informed counsel for McDonald's that policy 12XR461701 had been cancelled, effective March 1, 2020.

93.     The Insureds filed their Complaint in this case on August 27, 2020.

94.     At the time that the Insureds filed their Complaint in this action, Austin Mutual had not taken a final position on coverage and defense of the Insureds under the Policies, and believed the parties were continuing to discuss and attempt to resolve the coverage issues.

## THE POLICIES
## THE LEXI POLICY

95.     Austin Mutual issued a policy providing Businessowners coverage to Lexi Management LLC, with effective dates of March 1, 2020 to March 1, 2021, Policy No. BPP1691Q (the "Lexi Policy"). A true and accurate copy of the Lexi Policy is attached hereto as "Exhibit 2."

## THE DAK4 POLICY

96.     Austin Mutual issued a policy providing Businessowners coverage to DAK4, LLC, with effective dates of March 1, 2020 to March 1, 2021, Policy No. BPP1620Q (the

"DAK4 Policy"). A true and accurate copy of the DAK4 Policy is attached hereto as "Exhibit 3."
The Lexi Policy and the DAK4 Policy are collectively referred to herein as the "Policies."

**Common Provisions in the Policies**

97.  Unless stated otherwise, the provisions set forth below appear in both the Lexi
Policy and the DAK4 Policy.

98.  The Business Liability section of the Policies provides:

> We will pay those sums that the insured becomes legally obligated to pay
> as damages because of "bodily injury", "property damage" or "personal
> and advertising injury" to which this insurance applies. We will have the right and
> duty to defend the insured against any "suit" seeking those damages. However,
> We will have no duty to defend the insured against any "suit" seeking those
> damages for "bodily injury" , "property damage" or "personal and advertising
> injury" to which this insurance does not apply.

99.  The Policies provide that business liability coverage applies "to 'bodily injury'
and 'property damage' only if … [t]he 'bodily injury' or 'property damage' is caused by an
'occurrence' that takes place in the 'coverage territory'."

100.  The Policies, as modified by endorsement, define "bodily injury" as "bodily
injury, sickness, disease or mental anguish sustained by a person, including death resulting from
any of these at any time."

101.  The Policies define "occurrence" as "an accident, including continuous or
repeated exposure to substantially the same general harmful conditions."

102.  The Policies provide that business liability coverage applies "to 'bodily injury' …
only if … [p]rior to the policy period, no insured listed under Paragraph C.1. Who Is An Insured
and no 'employee' authorized by you to give or receive notice of an 'occurrence' or claim, knew
that the 'bodily injury' … had occurred, in whole or in part.  If such a listed insured or
authorized 'employee' knew, prior to the policy period, that the 'bodily injury' … occurred, then

25

any continuation, change or resumption of such 'bodily injury' … during or after the policy period will be deemed to have been known before the policy period."

103.    The Policies contain an exclusion removing coverage for "'bodily injury' … expected or intended from the standpoint of the insured."

104.    In an exclusion labeled "Employer's Liability," the Policies exclude coverage for:

"Bodily injury" to:

**(1)** An "employee" of the insured arising out of an in the course of:

    **(a)** Employment by the insured; or

    **(b)** Performing duties related to the conduct of the insured's business; or

**(2)** The spouse, child, parent, brother or sister of that "employee" as a consequence of Paragraph (1) above.

105.    The Policies include an Employment-Related Practices Exclusion endorsement which provides, in part, as follows:

The following exclusion is added to Paragraph **B. Exclusions** in **Section II – Liability**:

This insurance does not apply to:

**1.**    "Bodily injury" or "personal and advertising injury" to:

    **a.**    A person arising out of any:

        **(1)**    Refusal to employ that person;
        **(2)**    Termination of that person's employment; or
        **(3)**    Employment-related practices, policies, acts or omissions, such as coercion, demotion, evaluation, reassignment, discipline, defamation, harassment, humiliation or discrimination directed at that person; or

    **b.**    The spouse, child, parent, brother or sister of that person as a consequence of "bodily injury" or "personal and advertising injury" to that person at whom any of the employment-related practices described in Paragraphs **(1)**,

26

**(2)** or **(3)** above is directed.

**2.**    This exclusion applies:

    **a.**    Whether the insured may be liable as an employer or in any other capacity; and

    **b.**    To any obligation to share damages with or repay someone else who must pay damages because of the injury.

**COUNT I – DECLARATORY JUDGMENT –**
**NO DUTY TO DEFEND BECAUSE THE *MASSEY* COMPLAINT DOES NOT SEEK**
**"DAMAGES BECAUSE OF BODILY INJURY"**
**(AGAINST LEXI MANAGEMENT, LLC, MCDONALD'S CORPORATION, AND**
**MCDONALD'S USA, LLC)**

In support of Count I – Declaratory Judgment, Austin Mutual states as follows:

106.    Austin Mutual incorporates the allegations set forth in paragraphs 1 through 105 as if fully set forth herein.

107.    The Insureds have called upon Austin Mutual to provide a defense for the *Massey* Lawsuit under the Policies.

108.    Austin Mutual does not have a duty to defend the Insureds against the *Massey* Lawsuit because the Policies require only that Austin Mutual "pay those sums that the insured becomes obligated to pay as damages because of 'bodily injury' … to which this insurance applies."

109.    "Bodily injury" is defined under the Policies as "bodily injury, sickness, disease or mental anguish sustained by a person, including death resulting from any of these at any time."

110.    As detailed above, the *Massey* Complaint does not seek any relief to redress or remedy any claim that the *Massey* Plaintiffs have suffered any alleged "bodily injury, sickness, disease or mental anguish." Indeed, the *Massey* Complaint makes clear that "seek only

declaratory and injunctive relief to order Defendants to adhere to their legal responsibilities and provide a safe working environment." Ex. 1, *Massey* Comp. ¶ 6.

111.    Not only does the *Massey* Complaint fail to seek relief or redress for any past "bodily injury, sickness, disease or mental anguish," but even those plaintiffs who alleged that they had contracted COVID-19 or had symptoms consistent with COVID-19 in the past do not allege that they contracted COVID-19 from exposure at the McDonald's where they work.

112.    Likewise, the *Massey* Complaint contains no allegations of "bodily injury" for the mother, daughter, son and girlfriend of the worker plaintiffs.  Indeed, the *Massey* Complaint does not allege that the non-worker plaintiffs have even been exposed to COVID-19, that they have been to a McDonald's restaurant during the pandemic, that they have contracted COVID-19, or that they have demonstrated any symptoms consistent with COVID-19.

113.    As noted above, the *Massey* Plaintiffs also seek to assert claims on behalf of two subclasses.  Members of the class are not required to have suffered any actual bodily injury to be members of the subclasses.  The only requirements to be in the subclasses are to have worked from April 1, 2020, at one of the McDonald's restaurants that are the subject of the *Massey* Complaint, or to have co-habitated with such a McDonald's worker during the same period.  Ex. 1, *Massey* Comp. ¶ 107.

114.    Thus, the class allegations in the *Massey* Complaint demonstrate the absence of any actual bodily injury as the basis of the claims.  In fact, the *Massey* Complaint alleges that "the members of each subclass suffered the same legal violations" and seek[] the same remedy for the legal violations attributable to Defendants, *i.e.*, injunctive and declaratory relief."  Ex. 1, *Massey* Comp. ¶¶ 108-109.

115.    The *Massey* Complaint seeks to require the Insureds to take actions in the workplace to reduce or limit the risk that the *Massey* Plaintiffs will suffer "bodily injury, sickness, disease or mental anguish" in the future, including mandating that the employers provide masks, gloves, other personal protective equipment, and hand sanitizer; enforce requirements for face coverings; inform workers about co-workers who contract COVID-19; supply workers with accurate information regarding COVID-19 and its risks; and train workers on preventative measures, including hand washing.

116.    The *Massey* Complaint does not seek injunctive or declaratory relief seeking to impose any obligation on the Insureds that would require them to pay sums to compensate for or to remediate in any way any actual alleged bodily injury, such as any monitoring of the *Massey* Plaintiffs' health condition, or treatment for any medical conditions related to COVID-19.

117.    Any sums that the Insureds are required to expend to comply with any injunctive relief requested by the *Massey* Plaintiffs would be entirely for the prevention of future exposure to the Virus and the risk that such exposure could result in such persons contracting COVID-19.

118.    Any sums that the Insureds are required to expend to comply with any injunctive relief requested by the *Massey* Plaintiffs would not address or remedy any actual alleged bodily injury from past exposure.

119.    Because any sums that the Insureds could be required to spend to comply with the injunctive relief requested in the *Massey* Complaint would not be sums the Insureds are required to pay as "damages because of 'bodily injury,'" as defined by the Policies, there is no potential that such sums would be within the coverage of the Policies.

120.    Plaintiffs have not claimed that any of the relief sought in the *Massey* Complaint would constitute damages because of "property damage," which requires physical damage to or

loss of use of tangible property. Indeed, any sums that the Insureds are required to expend to comply with any injunctive relief requested by the *Massey* Plaintiffs would not address or remedy any "property damage" as defined by the Policies.

121. Because there is no potential for coverage under the Policies for sums the Insureds may be required to spend to comply with the injunctive relief sought in the *Massey* Complaint, Austin Mutual has no duty to defend the *Massey* Lawsuit.

122. An actual controversy exists between the parties concerning their respective rights under the Policies and, therefore, there is a justiciable controversy that is ripe for determination by declaratory judgment pursuant to 28 U.S.C. § 2201.

123. Therefore, a declaratory judgment is both necessary and proper in order to set forth and determine the rights, obligations and liability that exist between the parties under the Policies in connection with the *Massey* Lawsuit.

WHEREFORE, Counterclaim Plaintiff Austin Mutual Insurance Company prays that this Court enter judgment in its favor and declare the following:

    1.    Austin Mutual does not have a duty to defend the Insureds against the *Massey* Lawsuit because that action does not seek "damages because of bodily injury";

    2.    Any other and further relief this Court may deem just and proper.

**COUNT II – DECLARATORY JUDGMENT –
NO DUTY TO DEFEND BECAUSE THE *MASSEY* COMPLAINT
DOES NOT ALLEGE AN "OCCURRENCE"
(AGAINST DAK4, LLC, MCDONALD'S CORPORATION, AND
MCDONALD'S USA, LLC)**

In support of Count II – Declaratory Judgment, Austin Mutual states as follows:

124. Austin Mutual incorporates the allegations set forth in paragraphs 1 through 123 as if fully set forth herein.

125.    The Insureds have called upon Austin Mutual to provide a defense for the *Massey* Lawsuit under the Policies.

126.    Austin Mutual does not have a duty to defend the Insureds against the *Massey* Lawsuit because the business liability coverage under the Policies applies "to 'bodily injury' … only if … [t]he 'bodily injury' … is caused by an 'occurrence' that takes place in the 'coverage territory'."

127.    Even if the *Massey* Complaint alleged "bodily injury," which as set forth above it does not, the Policies define "occurrence" as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions."

128.    The injury alleged in the *Massey* Complaint is not the result of an accident as that term is used in the Policies.  The *Massey* Complaint alleges that the plaintiff workers at McDonald's restaurants are allegedly injured because they face an increased risk of exposure to the Virus, which creates an increased likelihood that they might contract COVID-19 in the future.  The alleged increased risk of exposure to COVID-19 or increased risks of contracting COVID-19 are not the result of unexpected, unintended, or unusual events.  Instead, those alleged increased risks are the natural and ordinary consequences of the alleged failures of the Insureds to adopt and enforce adequate safety precautions at their restaurants.  Accordingly, the alleged injuries do not result from an accident.

129.    Prior to the filing of the *Massey* Complaint, the CDC, numerous government agencies, and health experts had already provided guidance to the public and, in particular, to food retailers like the Insureds, regarding steps that are necessary to reduce the risks associated with operating businesses during the pandemic.  As a result, the Insureds were well aware of the

risks related to COVID-19 and the risks of failing to implement the recommended safety precautions.

130.    Illinois Governor Pritzker's April 30, 2020, executive order addressed the need for essential businesses to provide face coverings and other personal protective equipment, comply with social distancing requirements, and provide hand sanitizer and other sanitizing products.

131.    McDonald's itself publicly acknowledged the need to take significant precautionary steps in its restaurants in corporate statements in March and April, 2020, at the same time emphasizing that it was working closely with its franchisees.  In its statement on April 1, 2020, for example, McDonald's committed to the implementation of social distancing guideless, increased cleanings, and making hand sanitizers available in all restaurants.

132.    Indeed, in a May 7, 2020 statement, McDonald's stated that it had committed to wellness checks, social distancing, masks and gloves for employees, and protective barriers.

133.    The *Massey* Complaint alleges that "[c]ontrary to their promises, Defendants have failed to take proper precautions to protect employees, including the worker plaintiffs, and the public, from the spread of COVID-19.  McDonald's and the defendant franchisees have failed to implement government guidance and expert recommendations at the stores where the worker plaintiffs are employed."  Ex. 1, *Massey* Comp. ¶ 59.

134.    By mid-May 2020 when the *Massey* Complaint was filed, COVID-19 was truly global in its reach and a constant, over-arching reality everywhere for everyone.  The public was inundated with information regarding the risks of COVID-19 and its spread among the population, as businesses and the public navigated stay-at-home orders and restrictions on business operations.

135.    The *Massey* Complaint alleges that workers at the McDonald's restaurants operated by Lexi, DAK4 and McDonald's Restaurants of Illinois, Inc. have apparently missed work because of illness potentially related to COVID-19 from at least early March 2020, but the management of the restaurants has not provided information to the workers.

136.    In that environment and with the information publicly available, the alleged increased risk of exposure to the Virus as alleged in the *Massey* Complaint was the natural and foreseeable result of the Insureds' alleged conduct in failing to adopt or implement proper safeguards, even those set out in McDonald's own policies, as well as the recommendations of the CDC and other government agencies and health experts.

137.    Because the risks posed by the Virus and the alleged increased risk of exposure to the Virus asserted in the *Massey* Complaint was the natural and foreseeable result of the Insureds' conduct, it was not the result an "accident" as that term is used in the Policies.

138.    Because the increased risk of exposure to the Virus asserted by the *Massey* Plaintiffs was not an "accident," even if the *Massey* Complaint alleged "bodily injury" (which it does not), it was not caused by an "occurrence" as that term is defined in the Policies.

139.    Because the *Massey* Complaint does not allege an "occurrence" as that term is defined in the Policies, there is no potential that any sums the Insureds are required to pay as a result of the *Massey* Lawsuit would be within the coverage of the Policies.

140.    Because there is no potential for coverage under the Policies for sums the Insureds may be required to pay as a result of the *Massey* Lawsuit, Austin Mutual has no duty to defend the *Massey* Lawsuit.

141.     An actual controversy exists between the parties concerning their respective rights under the Policies and, therefore, there is a justiciable controversy that is ripe for determination by declaratory judgment pursuant to 28 U.S.C. § 2201.

142.     Therefore, a declaratory judgment is both necessary and proper in order to set forth and determine the rights, obligations and liability that exist between the parties under the Policies in connection with the *Massey* Lawsuit.

WHEREFORE, Counterclaim Plaintiff Austin Mutual Insurance Company prays that this Court enter judgment in its favor and declare the following:

1.     Austin Mutual does not have a duty to defend the Insureds against the *Massey* Lawsuit because any alleged "bodily injury" was not caused by an "occurrence";

2.     Any other and further relief this Court may deem just and proper.

### COUNT III – DECLARATORY JUDGMENT – NO DUTY TO DEFEND BECAUSE THE *MASSEY* COMPLAINT ALLEGES "BODILY INJURY" KNOWN TO THE INSUREDS (AGAINST DAK4, LLC, MCDONALD'S CORPORATION, AND MCDONALD'S USA, LLC)

In support of Count III – Declaratory Judgment, Austin Mutual states as follows:

143.     Austin Mutual incorporates the allegations set forth in paragraphs 1 through 142 as if fully set forth herein.

144.     The Insureds have called upon Austin Mutual to provide a defense for the *Massey* Lawsuit under the Policies.

145.     Austin Mutual does not have a duty to defend the Insureds against the *Massey* Lawsuit because the business liability coverage under the Policies applies "to 'bodily injury' … only if … [p]rior to the policy period, no insured … knew that the 'bodily injury' … had occurred, in whole or in part."

146. The policy period for each of the Policies commenced on March 1, 2020.

147. Prior to the policy period, on January 21, 2020, the first case of COVID-19 in the U.S. was confirmed in the state of Washington.

148. Prior to the policy period, on January 30, 2020, the CDC confirmed the first instance of person-to-person spread of the Virus, which occurred between Illinois residents.

149. Prior to the policy period, on January 31, 2020, HHS Secretary Azar declared that the Virus constitutes a public health emergency, retroactive to January 27, 2020.

150. Prior to the policy period, on January 31, 2020, reflecting widespread knowledge regarding risks associated with exposure to anyone with COVID-19, President Trump issued an executive order banning foreign nationals who had been in China in the previous fourteen days from entering the United States.

151. Prior to the policy period, on February 26, 2020, the CDC confirmed the first instance of community spread of the Virus in the U.S., reflecting the risk of spreading the Virus from contact with others.

152. Prior to the policy period, on February 26, 2020, the CDC issued "Interim Guidance for Businesses and Employers to Plan and Respond to Coronavirus Disease 2019 (COVID-19)." This guidance recommended a number of steps that employers should take to "help prevent workplace exposures to acute respiratory illnesses, including COVID-19."

153. The steps recommended in the February 26, 2020 CDC guidance included, at least in part, actions that the *Massey* Complaint alleges as the relief requested in that suit, including providing hand sanitizer for workers and employees to use and informing fellow employees when another employee is confirmed to have contracted COVID-19.

154.    Given the extraordinary focus of the government, the CDC, the press and businesses on the Virus in January and February 2020 and the disruption in their businesses, on information and belief, the Insureds were aware of the risks to workers and customers from their business and physical contact among those employees and customers.

155.    Indeed, in its 2019 Annual Report, filed on February 26, 2020, prior to the policy period, McDonald's stated that in developing a response to COVID-19, it was building on its business "alignment across the three legs of our system— company employees, independent franchisees and global suppliers."  It further stated that its "top priority is to protect the health and safety of our people and customers" and referenced its response to the Virus "through actions like implementing paid sick leave in the U.S. and enhancing hygiene measures at all company-owned restaurants, as well as closing in-restaurant dining where necessary."  These statements reflect the Insureds' knowledge of the risks to workers and customers from exposure to the Virus.

156.    Because the alleged increased risk of exposure to COVID-19 from inadequate safety measures, as alleged in the *Massey* Complaint, was known in whole or in part to the Insureds prior to the policy period, there is no potential for coverage of the *Massey* Lawsuit under the Policies.

157.    Because there is no potential for coverage under the Policies for sums the Insureds may be required to pay as a result of the *Massey* Lawsuit, Austin Mutual has no duty to defend the *Massey* Lawsuit.

158.    An actual controversy exists between the parties concerning their respective rights under the Policies and, therefore, there is a justiciable controversy that is ripe for determination by declaratory judgment pursuant to 28 U.S.C. § 2201.

159.     Therefore, a declaratory judgment is both necessary and proper in order to set forth and determine the rights, obligations and liability that exist between the parties under the Policies in connection with the *Massey* Lawsuit.

WHEREFORE, Counterclaim Plaintiff Austin Mutual Insurance Company prays that this Court enter judgment in its favor and declare the following:

1.     Austin Mutual does not have a duty to defend the Insureds against the *Massey* Lawsuit because any alleged "bodily injury" was known to the Insureds prior to the commencement of the policy period;

2.     Any other and further relief this Court may deem just and proper.

**COUNT IV – DECLARATORY JUDGMENT –**
**NO DUTY TO DEFEND BECAUSE COVERAGE FOR THE *MASSEY* COMPLAINT**
**IS PRECLUDED BY THE EMPLOYERS' LIABILITY EXCLUSION**
**(AGAINST DAK4, LLC, MCDONALD'S CORPORATION, AND**
**MCDONALD'S USA, LLC)**

In support of Count IV – Declaratory Judgment, Austin Mutual states as follows:

160.     Austin Mutual incorporates the allegations set forth in paragraphs 1 through 159 as if fully set forth herein.

161.     The Insureds have called upon Austin Mutual to provide a defense for the *Massey* Lawsuit under the Policies.

162.     Austin Mutual does not have a duty to defend the Insureds against the *Massey* Lawsuit because the Policies include an exclusion labeled "Employer's Liability," which excludes from coverage "bodily injury" to "[a]n 'employee' of the insured arising out of and in the course of" … "[e]mployment by the insured" or "[p]erforming duties related to the conduct of the insured's business."

163.    The "Employer's Liability" exclusion also excludes coverage for "bodily injury" to "[t]he spouse, child, parent, brother or sister of that 'employee' as a consequence of" any "bodily injury" to an "employee" covered by the exclusion.

164.    The *Massey* Complaint alleges that plaintiffs Taynarvis Massey and Ryan Freeman are employees at McDonald's restaurants that were owned and operated by Lexi.

165.    The *Massey* Complaint alleges that plaintiffs Maria Villasenor and Sujey Figueroa are employees at McDonald's restaurants operated by McDonald's Restaurants of Illinois, Inc., a wholly-owned subsidiary of McDonald's USA and, therefore, an insured under the Policies.

166.    The *Massey* Complaint alleges that plaintiff Truvon Turner is an employee at a McDonald's restaurant owned and operated by DAK4.

167.    The alleged increased risk of exposure to COVID-19 alleged in the *Massey* Complaint is allegedly caused by the Insureds' failure "to take proper precautions to protect employees, including the worker plaintiffs, and the public, from the spread of COVID-19" and their failure "to implement government guidance and expert recommendations at the stores where the worker plaintiffs are employed."  Ex. 1, *Massey Comp.* ¶ 59.

168.    The *Massey* Complaint makes clear that "Plaintiffs are vulnerable to severe bodily injury or death from infection *caused by the unsafe environment in which they work*."  Ex. 1, *Massey* Comp. ¶ 123 (emphasis added).

169.    Because any injuries alleged in the *Massey* Complaint to the worker plaintiffs are injuries to employees of the Insureds "arising out of and in the course of" their "[e]mployment by the insured," any such alleged "bodily injury" is excluded from coverage by the Employers' Liability exclusion.

170.    Because any injuries alleged in the *Massey* Complaint to the worker plaintiffs are injuries to employees of the Insureds in the course of "[p]erforming duties related to the conduct of the insured's business," any such alleged "bodily injury" is excluded from coverage by the Employers' Liability exclusion.

171.    Because the claims in the *Massey* Complaint are based entirely on the working conditions of the plaintiffs, the Employers' Liability exclusion precludes any potential for coverage and Austin Mutual has no duty to defend the *Massey* Lawsuit.

172.    An actual controversy exists between the parties concerning their respective rights under the Policies and, therefore, there is a justiciable controversy that is ripe for determination by declaratory judgment pursuant to 28 U.S.C. § 2201.

173.    Therefore, a declaratory judgment is both necessary and proper in order to set forth and determine the rights, obligations and liability that exist between the parties under the Policies in connection with the *Massey* Lawsuit.

WHEREFORE, Counterclaim Plaintiff Austin Mutual Insurance Company prays that this Court enter judgment in its favor and declare the following:

1.    Austin Mutual does not have a duty to defend the Insureds against the *Massey* Lawsuit because the claims in the *Massey* Lawsuit are excluded from coverage by the Employers' Liability exclusion;

2.    Any other and further relief this Court may deem just and proper.

**COUNT V – DECLARATORY JUDGMENT –
NO DUTY TO DEFEND BECAUSE COVERAGE FOR THE *MASSEY* COMPLAINT
IS PRECLUDED BY THE EMPLOYMENT-RELATED PRACTICES LIABILITY
EXCLUSION
(AGAINST DAK4, LLC, MCDONALD'S CORPORATION, AND
MCDONALD'S USA, LLC)**

In support of Count V – Declaratory Judgment, Austin Mutual states as follows:

174. Austin Mutual incorporates the allegations set forth in paragraphs 1 through 173 as if fully set forth herein.

175. The Insureds have called upon Austin Mutual to provide a defense for the *Massey* Lawsuit under the Policies.

176. Austin Mutual does not have a duty to defend the Insureds against the *Massey* Lawsuit because the Policies include an exclusion labeled "Employment-Related Practices Liability" (the "ERP Exclusion"), which excludes from coverage "bodily injury" "arising out of any" "Employment-related practices, policies, acts or omissions, such as coercion, demotion, evaluation, reassignment, discipline, defamation, harassment, humiliation or discrimination directed at that person."

177. The ERP Exclusion also excludes coverage for "bodily injury" to "[t]he spouse, child, parent, brother or sister of that 'employee' as a consequence of bodily injury" to a person at whom the employment-related practice was directed.

178. The *Massey* Complaint alleges that plaintiffs Taynarvis Massey and Ryan Freeman are employees at McDonald's restaurants that were owned and operated by Lexi.

179. The *Massey* Complaint alleges that plaintiffs Maria Villasenor and Sujey Figueroa are employees at McDonald's restaurants operated by McDonald's Restaurants of Illinois, Inc., a wholly-owned subsidiary of McDonald's USA and, therefore, an insured under the Policies.

180. The *Massey* Complaint alleges that plaintiff Truvon Turner is an employee at a McDonald's restaurant owned and operated by DAK4.

181. The alleged increased risk of exposure to COVID-19 alleged in the *Massey* Complaint is allegedly caused by the Insureds' failure "to take proper precautions to protect employees, including the worker plaintiffs, and the public, from the spread of COVID-19" and

their failure "to implement government guidance and expert recommendations at the stores where the worker plaintiffs are employed." Ex. 1, *Massey Comp.* ¶ 59.

182.    The *Massey* Complaint makes clear that "Plaintiffs are vulnerable to severe bodily injury or death from infection *caused by the unsafe environment in which they work*." Ex. 1, *Massey* Comp. ¶ 123 (emphasis added).

183.    Because any injuries alleged in the *Massey* Complaint are injuries "arising out of" the employment-related practices and policies of the Insureds with respect to a response to COVID-19, any such alleged "bodily injury" is excluded from coverage by the ERP Exclusion.

184.    Because the claims in the *Massey* Complaint are based entirely on the working conditions established by the Insureds, the ERP Exclusion precludes any potential for coverage and Austin Mutual has no duty to defend the *Massey* Lawsuit.

185.    An actual controversy exists between the parties concerning their respective rights under the Policies and, therefore, there is a justiciable controversy that is ripe for determination by declaratory judgment pursuant to 28 U.S.C. § 2201.

186.    Therefore, a declaratory judgment is both necessary and proper in order to set forth and determine the rights, obligations and liability that exist between the parties under the Policies in connection with the *Massey* Lawsuit.

WHEREFORE, Counterclaim Plaintiff Austin Mutual Insurance Company prays that this Court enter judgment in its favor and declare the following:

1.    Austin Mutual does not have a duty to defend the Insureds against the *Massey* Lawsuit because the claims in the *Massey* Lawsuit are excluded from coverage by the ERP Exclusion;

2.    Any other and further relief this Court may deem just and proper.

41

**COUNT VI – DECLARATORY JUDGMENT –
NO DUTY TO DEFEND BECAUSE THE POLICIES EXCLUDE COVERAGE FOR
"BODILY INJURY" THAT WAS EXPECTED OR INTENDED
(AGAINST DAK4, LLC, MCDONALD'S CORPORATION, AND
MCDONALD'S USA, LLC)**

In support of Count V – Declaratory Judgment, Austin Mutual states as follows:

187.    Austin Mutual incorporates the allegations set forth in paragraphs 1 through 186 as if fully set forth herein.

188.    The Insureds have called upon Austin Mutual to provide a defense for the *Massey* Lawsuit under the Policies.

189.    Austin Mutual does not have a duty to defend the Insureds against the *Massey* Lawsuit because the business liability coverage under the Policies excludes coverage for "'bodily injury' … expected or intended from the standpoint of the insured."

190.    The *Massey* Complaint alleges that the plaintiff workers at McDonald's restaurants are allegedly injured because, as a result of the Insureds' failure to adopt or implement the safety measures recommended by the CDC and identified in McDonald's own corporate policies, they face an increased risk of exposure to the Virus and an increased likelihood that they might contract COVID-19 in the future.

191.    As alleged above, prior to the filing of the *Massey* Complaint, the CDC, numerous government agencies, and health experts had already provided guidance to the public and, in particular, to food retailers like the Insureds, regarding steps that are necessary to reduce the risks associated with operating businesses during the pandemic.  Indeed, before the *Massey* Complaint was filed, COVID-19, its risks and its spread among the population dominated the news and business in the United States.  the Insureds were well aware of the risks related to COVID-19 and the risks of failing to implement the recommended safety precautions.

42

192.    The alleged increased risk of exposure to COVID-19 or increased risks of contracting COVID-19 are the expected result of the alleged failure by the Insureds to implement and enforce safety measures that were designed and recommended for the purpose of reducing the risk of the spread of COVID-19.

193.    Because the increased risk of exposure to the Virus asserted in the *Massey* Complaint was "expected and intended" as used in the Policies, coverage for the *Massey* Complaint is excluded by the plain language of the Policies, and Austin Mutual has no duty to defend the *Massey* Lawsuit.

194.    Any actual controversy exists between the parties concerning their respective rights under the Policies and, therefore, there is a justiciable controversy that is ripe for determination by declaratory judgment pursuant to 28 U.S.C. § 2201.

195.    Therefore, a declaratory judgment is both necessary and proper in order to set forth and determine the rights, obligations and liability that exist between the parties under the Policies in connection with the *Massey* Lawsuit.

WHEREFORE, Counterclaim Plaintiff Austin Mutual Insurance Company prays that this Court enter judgment in its favor and declare the following:

1.    Austin Mutual does not have a duty to defend the Insureds against the *Massey* Lawsuit because any alleged "bodily injury" is excluded from coverage under the Policies because such alleged injury was "expected and intended";

2.    Any other and further relief this Court may deem just and proper.

Dated:  September 24, 2021

By */s/ Michael L. Rice*

Holly A. Harrison
Michael L. Rice
HARRISON LAW LLC
141 W. Jackson Blvd.

Suite 2055
Chicago, IL 60604
(t) (312) 638-8776
(f) (312) 638-8793
hollyharrison@hlawllc.com
mikerice@hlawllc.com

ATTORNEYS FOR
DEFENDANT/COUNTER-PLAINTIFF
AUSTIN MUTUAL INSURANCE COMPANY

## CERTIFICATE OF SERVICE

The undersigned attorney hereby certifies that on September 24, 2021, the foregoing **AUSTIN MUTUAL INSURANCE COMPANY'S FIRST AMENDED COUNTERCLAIMS FOR DECLARATORY JUDGMENT** was electronically filed with the Clerk of the U.S. District Court prior to midnight Central time, using the CM/ECF system, which will provide notice to all counsel of record.

*s/ Michael L. Rice*
Michael L. Rice
Attorney for Defendant and Counter-Plaintiff
Austin Mutual Insurance Company